CITY OF FORT THOMAS, Appellant

v.

CINCINNATI ENQUIRER, a Division of Gannett Satellite Information Network, Inc., d/b/a Kentucky Enquirer, Appellee.

No. 2011–SC–000725–DG.

Supreme Court of Kentucky.

Aug. 29, 2013.

Jeffrey C. Mando, Jennifer H. Langen, for appellant.

Paul Alley, John C. Greiner, for appellee.

Jon L. Fleischaker, Jeremy Stuart Rogers, for Amicus Curiae.

Opinion of the Court by Justice ABRAMSON.

The Kentucky Open Records Act ("ORA" or "the Act"), Kentucky Revised Statutes (KRS) 61.870 to 61.884, provides in general for the "free and open examination of public records." KRS 61.871. Because the General Assembly has deemed the open examination of some records not to be in the public interest, however, the ORA also provides for exceptions to that general rule of openness. One such exception, the so-called law enforcement exemption, appears at KRS 61.878(1)(h) and, in pertinent part, excludes from the Act's disclosure provisions "[r]ecords of law enforcement agencies ... that were compiled in the process of detecting and investigating statutory ... violations if the disclosure of the information would harm the agency ... by premature release of information to be used in a prospective law enforcement action." Invoking this provision, the City of Fort Thomas, through its police department, denied a request by the Cincinnati Enquirer, the Appellee, to in-

spect and copy the entire police file generated during a then-recent homicide investigation. After an unsuccessful appeal to the Attorney General, the Enquirer brought the present action pursuant to KRS 61.882.

The Campbell Circuit Court upheld the City's denial of the newspaper's request, but the Court of Appeals, upon its review of the matter, disagreed. Rejecting the City's claim of a blanket exemption for its investigatory file, a majority of the Court of Appeals panel in effect reversed in part and vacated in part the pertinent portion of the trial court's order and remanded with instructions that the file be parsed into exempt and non-exempt portions with the latter released to the newspaper. The appellate court also seemingly ordered the trial court to award fees and costs against the City.

We granted the City's motion for discretionary review to consider the Court of Appeals' ruling in light of this Court's opinion in *Skaggs v. Redford*, 844 S.W.2d 389 (Ky.1992), a case involving an Open Records Act request for a Commonwealth's Attorney's case file. Although we reject the Court of Appeals' suggestion that an award of attorneys' fees is appropriate against the City, we do agree that the City, unlike a Commonwealth's Attorney, can invoke the law enforcement exemption only upon a more particularized showing than it has made thus far regarding the harm that would result to the agency upon release of the records. To that extent therefore, we affirm the Court of Appeals' order of remand.

### RELEVANT FACTS

In the summer of 2007, Cheryl McCafferty was accused of having shot and killed her husband in the home they shared with their two teenage children in Fort Thomas. Fort Thomas police officers investigated the incident and assisted in McCafferty's prosecution. Following a jury trial in March 2009, McCafferty was found guilty of first-degree manslaughter. Pursuant to an agreement with the Commonwealth, McCafferty then waived her right to appeal in exchange for an eighteen-year prison sentence with the possibility of parole once she had served twenty percent of that sentence.

Among the exhibits introduced at McCafferty's trial were two videotapes recorded by police officers during their initial response to the shooting. One of the recordings was made with a camera mounted on the officer's police car and depicted the outside of the McCaffertys' home while the other recording was made by an officer as he walked through the home. The latter tape depicted both the exterior and the interior of the home, including pictures of the children's bedrooms, and it culminated with pictures of Mr. McCafferty's body.

On March 16, 2009, after McCafferty had been convicted but prior to her sentencing, a local television station requested from the City, pursuant to the ORA, any videotaped interviews made during the investigation. The City gave the station the two aforementioned tapes used at trial, but only after having redacted from the second one footage of the home's interior which, in the City's view, amounted to an unwarranted invasion of the family's privacy.

About three weeks later, the Enquirer submitted its ORA request to the City for "access to, and copies of, the investigation into Robert McCafferty's death." Denying this request *in toto*, the City invoked the law enforcement exemption, which, the City maintained, provides a blanket exemption for the records of law enforcement agencies until an enforcement action is complete. Noting that, notwithstanding the waiver of her right to appeal, McCaf-

ferty could still challenge her conviction collaterally pursuant to Kentucky Rule of Criminal Procedure (RCr) 11.42, the City asserted that the enforcement action against her was not "complete" and that its case file regarding her was thus exempt in its entirety from the ORA.

In proceedings before the Attorney General, the Campbell Circuit Court, and the Court of Appeals, the newspaper took issue with the City's invocation of this ORA exemption on several grounds.[1] First, the newspaper maintained that the "enforcement proceeding" against McCafferty was "complete," inasmuch as her waiver precluded any direct appeal and because her sentencing agreement made a collateral challenge unlikely. Even if the enforcement proceeding against McCafferty could still be deemed "prospective," moreover, the law enforcement exemption applies only to disclosures that would "harm" the agency in such a proceeding, and, the newspaper contended, the City had made no showing of harm. This, the newspaper insisted, was especially and patently so with respect to those portions of the police file already disclosed to McCafferty during discovery and those portions made public either by being introduced at trial or, in the case of the two tapes, by being released to the television station.

Although they agreed with the newspaper that it should have been given the videotapes already released to the television station, the Attorney General and the trial court sided otherwise with the City. In their view, the possibility of a collateral challenge made the enforcement proceeding against McCafferty meaningfully prospective, and "harm" to the agency could be found merely from the possibility that, were the proceeding to be reopened, a

prior disclosure of the police file might "thwart its renewed investigation." They ruled, accordingly, that the City had properly invoked the KRS 61.878(1)(h) exemption.

The Court of Appeals likewise held that for the purposes of that exemption a criminal conviction subject to collateral challenge is not "complete," but rather continues to offer the prospect of an enforcement proceeding. The Court of Appeals based its holding on this Court's determination in *Skaggs* that the law enforcement exemption applied to a prosecutor's litigation files sought under the ORA by the defendant-subject of those files who at that point was a prospective habeas petitioner. The state's interest in prosecuting the petitioner, the *Skaggs* Court noted, "is not terminated until his sentence has been carried out," 844 S.W.2d at 390, and the Court concluded, accordingly, that "the defense of the prospective habeas corpus proceedings is part of the 'law enforcement action' in the [petitioner's] case." *Id.* Although in this case, unlike *Skaggs*, a collateral proceeding was not "in the works" at the time of the ORA request, that difference, the Court of Appeals decided, did not amount to a material distinction, and the newspaper has not challenged that decision before this Court. *Cf. Mapother v. Department of Justice*, 3 F.3d 1533, 1541 (D.C.Cir.1993) (distinguishing, under the parallel exemption provision of the federal Freedom of Information Act, between enforcement actions brought by the agency and actions brought as challenges against the agency, and holding, with respect to the latter, that the exemption can be invoked "so long as such a challenge can reasonably be anticipated").

---

1. The newspaper also challenged the City's invocation of the privacy exemption, KRS 61.878(1)(a), with respect to the redacted videotape, but the Court of Appeals upheld the redaction and the newspaper did not cross-petition for review of that decision.

Contrary to the views of the Attorney General and the trial court, however, the Court of Appeals' majority understood the "harm" element of the law enforcement exemption to require a definite and substantial showing by the agency that release of the requested records would interfere with a prospective enforcement proceeding, *i.e.*, a showing more definite and substantial than the generalized and purely speculative harms the City had thus far adduced.[2] It therefore, in effect, vacated the trial court's order and remanded the matter for a more particularized consideration of the requested records, with the release to follow of any portion of them not meeting the statutory exemption. The City contends that the Court of Appeals' ruling is contrary both to the statute's plain terms and to this Court's decision in *Skaggs*. To those contentions, therefore, we now turn.

### ANALYSIS

■ To begin, it is helpful to observe that when an agency denies an ORA request, the requester has two ways to challenge the denial. He or she may, under KRS 61.882, file an original action in the Circuit Court seeking injunctive and/or other appropriate relief. Alternatively, under KRS 61.880, he or she may, as was done in this case, ask the Attorney General to review the matter. Once the Attorney General renders a decision either party

then has thirty days within which to bring an action pursuant to KRS 61.882(3) in the Circuit Court. Although the statutes refer to this second type of Circuit Court proceeding as an "appeal" of the Attorney General's decision, it is an "appeal" only in the sense that if a Circuit Court action is not filed within the thirty-day limitations period, the Attorney General's decision becomes binding on the parties and enforceable in court. Otherwise, this second sort of Circuit Court proceeding is an original action just like the first sort. KRS 61.880(5)(a) (The appeal is to be treated "as if it were an action brought under KRS 61.882."). The Circuit Court does not review and is not in any sense bound by the Attorney General's decision, nor is it limited to the "record" offered to the Attorney General. KRS 61.882(3) (The circuit court is to "determine the matter *de novo* "). The agency, rather, bears the burden of proof, *id.*, and what it must prove is that any decision to withhold responsive records was justified under the Act. *Bowling v. Lexington–Fayette Urban County Gov't.*, 172 S.W.3d 333 (Ky.2005).[3] Its proof may and often will include an outline, catalogue, or index of responsive records and an affidavit by a qualified person describing the contents of withheld records and explaining why they were withheld. *See, e.g., Kentucky Bd. of Examiners of Psychologists v. Courier–Journal & Louisville Times Co.*, 826 S.W.2d 324 (Ky. 1992) (agency's proof included verified ca-

**2.** Before the Attorney General, the City addressed the "harm" element by claiming, generally, that were McCafferty to be granted a new trial, release of the file "would be detrimental to the prosecution of this case." As an example of the asserted detriment, the City noted that at a new trial McCafferty might attempt to raise a "spousal abuse" defense, in which case any information in the file regarding such abuse "would be essential to the prosecution of the case." The City did not assert, however, that there was in fact any such information in the file, nor did it attempt

to explain why this particular concern justified withholding the entire file. The City's position before the courts, including this one, has been that "harm" need not by shown, but is rather to be presumed from any release of its investigatory file.

**3.** If the requester makes a *prima facie* showing that responsive records have not been accounted for, then the agency may also be called upon to prove that its search was adequate. *Bowling*, 172 S.W.3d at 341.

talog of file's contents and affidavit by person who examined file describing the contents); *and cf. McDonnell v. United States*, 4 F.3d 1227 (3rd Cir.1993) (discussing the importance of agency affidavits to explain claims of exemption in typical cases under the Freedom of Information Act). The trial court may also hold a hearing if necessary, *Bowling*, and the parties may request or the court on its own motion may require the *in camera* inspection of any withheld records. KRS 61.882(3). We review the trial court's factual findings for clear error, and issues concerning the construction of the ORA we review *de novo. Commonwealth, Department of Corrections v. Chestnut*, 250 S.W.3d 655 (Ky.2008).

## I. A Police Department's Investigatory File is Not Categorically Exempt From Disclosure Under the Open Records Act Merely Because it Pertains To a Prospective Enforcement Action.

### A. The Act's Plain Terms Do Not Provide For Such a Categorical Exemption.

Aside from copies of the newspaper's request for records and its police chief's response to that request, the City in this case did not submit any formal proof. Through their pleadings and trial-court briefs, rather, the parties essentially stipulated to the facts summarized above. In particular, they agreed that the Fort Thomas Police Department had compiled, for law enforcement purposes, an investigatory file regarding the death of Mr. McCafferty; that following the investigation and trial Mrs. McCafferty had been convicted of manslaughter; and that Mrs. McCafferty's conviction remained subject to collateral challenge. This last fact, according to the City, is enough to render its entire investigatory file exempt under the Act. We disagree.

As noted at the outset of this Opinion, the General Assembly has declared that the "basic policy" of the ORA "is that free and open examination of public records is in the public interest." KRS 61.871.[4] Accordingly, the Act establishes a presumption to the effect that "[a]ll public records shall be open for inspection by any person." KRS 61.872(1). That presumption is subject only to a handful of statutorily specified exceptions. Those exceptions, the General Assembly has declared, are to be "strictly construed," KRS 61.871, and, as noted, the burden of establishing that an exception applies rests upon the agency resisting disclosure. KRS 61.882(3).

The exception at issue in this case, also as noted above, is the law enforcement exemption provided for by KRS 61.878(1)(h). That statute excludes from the application of the ORA

> [r]ecords of law enforcement agencies ... that were compiled in the process of detecting and investigating statutory ... violations if the disclosure of the information would harm the agency by revealing the identity of informants not otherwise known or by premature release of information to be used in a prospective law enforcement action.

4. In pertinent part the Act defines a "public record" as "all books, papers, maps, photographs, cards, tapes, discs, diskettes, recordings, software, or other documentation regardless of physical form or characteristics, which are prepared, owned, used, in the possession of or retained by a public agency." KRS 61.870(2). "Public agency" in turn means, among other things, "[e]very state or local government officer [and] [e]very state or local government department." KRS 61.870(1)(a)–(b). There is no dispute that the Fort Thomas Police Department is a "public agency" under the Act, or that its investigatory files are "public records."

Public records exempted under this last, "prospective action," provision are to become open for inspection once the pertinent "enforcement action is completed or a decision is made to take no action." The law enforcement exemption, in this form, has been a part of the Act since the Act first became law in 1976. H.B. 138 (1976) Section 5(f). In 1992, the General Assembly amended this statute by further exempting from the Act "records or information compiled and maintained by county attorneys or Commonwealth's attorneys pertaining to criminal investigations or criminal litigation," with such records to remain exempt even "after enforcement action, including litigation, is completed or a decision is made to take no action." This amendment, while not directly applicable to the case before us, figures in our discussion below.

■ To invoke the law enforcement exemption under the statute's "prospective action" prong, then, as the City claims to do here, the agency[5] must show (1) that the records to be withheld were compiled for law enforcement purposes; (2) that a law enforcement action is prospective; and (3) that premature release of the records would harm the agency in some articulable way. There is no dispute that the Fort Thomas Police Department's investigatory files were compiled for law enforcement purposes. The newspaper has conceded, furthermore, as the courts below held, that a potential RCr 11.42 motion challenging a criminal conviction is, for the purposes of the Act, a "prospective law enforcement action." The City would then conflate the second and the third elements and have us presume "harm" from any disclosure of a police file when an enforcement action is still a possibility. We agree with the Court of Appeals, however, that the City's reading of the statute does not comport with the clearly expressed intent of the General Assembly.[6]

■ In the first place, the City's asserted presumption of harm—a presumption in effect of non-disclosure—would turn on its head the Act's basic presumption of openness. It would also, by creating a blanket exemption for police files regardless of their contents, run totally counter to the General Assembly's directive that the exemptions from disclosure be "strictly construed." KRS 61.871. Blanket exemptions are also contrary to KRS 61.878(4), which provides that "[i]f any public record contains material which is not excepted under this section [KRS 61.878], the public agency shall separate the excepted and make the unexcepted material available for examination." With its purported blanket exemption, the City would relieve itself of this statutory obligation. Finally, under the City's reading, the statute's "harm" provision becomes mere surplusage, being subsumed by and adding nothing to the "prospective action" provision. This contravenes one of our basic tenets of statutory construction—a presumption that the General Assembly intended "for all of [the statute's] parts to have meaning." *Shawnee Telecom Resources, Inc.*, 354 S.W.3d at 551. For all of these reasons, we reject the City's contention that to invoke the "prospective action" prong of the law en-

---

**5.** With respect to criminal matters, County Attorneys and Commonwealth's Attorneys have the aforementioned exemption adopted in 1992 and, thus, the analysis for those agencies is different.

**6.** Our goal, of course, in construing a statute, "is to give effect to the intent of the General Assembly," and we derive that intent, if at all possible, "from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." *Shawnee Telecom Resources, Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky.2011).

forcement exemption an agency need show no more than an entire file's general relation to a possible enforcement action.

■ We hold, rather, that the law enforcement exemption is appropriately invoked only when the agency can articulate a factual basis for applying it, only, that is, when, because of the record's content, its release poses a concrete risk of harm to the agency in the prospective action. A concrete risk, by definition, must be something more than a hypothetical or speculative concern. This holding is consistent with the holdings of numerous courts, the United States Supreme Court included, which, construing similar open record statutes, have likewise rejected claims of a blanket law enforcement exemption and have required instead some factual showing that disclosure of records of the particular kind, or kinds, at issue would prejudice the agency. *See, e.g., National Labor Relations Board v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *Sussman v. United States Marshals Service,* 494 F.3d 1106 (D.C.Cir.2007); *Manna v. United States Dept. of Justice,* 51 F.3d 1158 (3rd Cir. 1995); *Lesher v. Hynes,* 19 N.Y.3d 57, 945 N.Y.S.2d 214, 968 N.E.2d 451 (2012); *Fioretti v. Maryland State Board of Dental Examiners,* 351 Md. 66, 716 A.2d 258 (1998); *Globe Newspaper Co. v. Police Commissioner of Boston,* 419 Mass. 852, 648 N.E.2d 419 (1995); *Evening News Association v. City of Troy,* 417 Mich. 481, 339 N.W.2d 421 (1983); and *see, generally,* Kristine Cordier Karnezis, VALIDITY, CONSTRUCTION, AND APPLICATION OF STATUTORY PROVISIONS RELATING TO PUBLIC ACCESS TO POLICE RECORDS, 82 A.L.R.3d 19 (1978).

■ Our holding does not mean that the agency is obliged in all cases to justify non-disclosure on a line-by-line or document-by-document basis. At least with respect to voluminous ORA requests, such as the newspaper's request in this case,[7] it is enough if the agency identifies the particular kinds of records it holds and explains how the release of each assertedly exempt category would harm the agency in a prospective enforcement action. *Cf. Lesher,* 945 N.Y.S.2d 214, 968 N.E.2d at 457 ("The agency must identify the generic kinds of documents for which the exemption is claimed, and the generic risks posed by disclosure of these categories of documents. Put slightly differently, the agency must still fulfill its burden under Public Officers Law § 89(4)(b) to articulate a factual basis for the exemption."). Our holding does mean, of course, that even if the agency adopts this generic approach it must itself identify and review its responsive records, release any that are not exempt, and assign the remainder to meaningful categories. A category is meaningful if it "allows the court to trace a rational link between the nature of the document and the alleged likely [harm to the agency]." *Bevis v. Department of State,* 801 F.2d 1386, 1389 (D.C.Cir.1986).

■ Open Records Act disputes are notorious, of course, for posing unique challenges to our usual adversarial method of dispute resolution. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973). Whereas in most disputes both sides have more-or-less equal access to the relevant facts, so that factual assertions and legal claims can be adversarially tested, in ORA cases only the agency knows what is in its records. In some cases, the court can assess an agency's exemption claims by inspecting the

---

**7.** In its complaint, the newspaper indicates its belief that the file it wishes to inspect could comprise as many as thirty boxes of records.

pertinent records *in camera,* but when the records are voluminous that is possible only to a limited extent, and even when *in camera* review is possible, the court must take care not to assume the role of adversary. Rather, the court must hold the agency to its burden of proof by insisting that the agency make a sufficient factual showing—by affidavit; by oral testimony; or, if necessary to preserve the exemption, by *in camera* production—to justify the exemption. The agency should provide the requesting party and the court with sufficient information about the nature of the withheld record (or the categories of withheld records) and the harm that would result from its release to permit the requester to dispute the claim and the court to assess it. If disclosure even to that limited extent would defeat the exemption, then *in camera* inspection may be necessary, but those cases should be the exception.

It appears that here the City has not yet made any attempt to identify non-exempt records in its file (except for the two videotapes it has already disclosed), and it assuredly has not made any attempt to identify categories of records the particular nature of which renders them exempt. Because the law enforcement exemption cannot be invoked without at least that minimum degree of factual justification, we agree with the Court of Appeals that the trial court erred when it allowed the City a blanket exemption. Accordingly, we affirm the Court of Appeals' decision to the extent that it vacated the trial court's order and remanded with instructions that the City be given an opportunity to make the required showing.

**B. *Skaggs v. Redford* Does Not Imply a Blanket Exemption For Law Enforcement Records.**

■■■■ Against this result, and in support of what it claims should be a blanket ex-emption for its police department's investigatory files, the City refers us to *Skaggs v. Redford,* in which this Court upheld the blanket exemption of a Commonwealth Attorney's prosecutorial files. 844 S.W.2d at 389. In that case, the ORA requester, Skaggs, was a death row inmate who had exhausted all of the state-court avenues for challenging his conviction. He made his ORA request to inspect the prosecutor's files in hopes of finding material to add to a federal-court petition for habeas corpus. The issue before this Court was whether, all means for relief having been exhausted in our state courts, the enforcement action against Skaggs was "complete" under the ORA, or whether the looming federal habeas petition was enough to render the enforcement action still prospective. The Court ruled that for ORA purposes the enforcement action in a criminal prosecution remains prospective "until [the defendant's] sentence has been carried out." 844 S.W.2d at 390. Thus, the Court held that the Act's law enforcement exemption still applied to the prosecutor's files. No issue was raised concerning that exemption's "harm" requirement, but the Court made a couple of comments which, in the City's view, imply that the mere fact that an enforcement action remains prospective is enough to establish that disclosure of anything from a law enforcement file constitutes "harm" under the exemption.

First, the *Skaggs* Court acknowledged that in 1992, during the pendency of Skaggs's ORA appeal, the General Assembly amended KRS 61.878(1)(g) (now (1)(h)) to provide a blanket exemption from the Act for prosecutors' litigation files regardless of whether the prosecution was "complete." The Court declined to address the retroactivity, and hence the applicability, of that amendment, however, because, in the Court's view, "the Commonwealth['s] Attorney's records in the appellant's case

were already exempt under the obvious intention of the statute as it stood prior to the amendment." 844 S.W.2d at 390. The City argues that inasmuch as prior to the 1992 amendment the law enforcement exemption made no distinction between a prosecutor's files and any other records compiled for law enforcement purposes, if "the obvious intention" of the pre–1992 statute was to accord the prosecutor's files a blanket and perpetual exemption, then the same exemption must have been intended for all other law enforcement records as well. The short answer to this argument is simply that that is clearly not the statute's intention, since if it were the General Assembly would have had no reason to include the statute's "harm" and "completeness" provisions, provisions which the 1992 amendment made inapplicable only to the litigation files of prosecutors. The *Skaggs* Court had before it only such prosecutorial files and it should not be understood as implying anything about other sorts of law enforcement records. To the extent that the *Skaggs* Opinion can be thought to include any such broader implication, it is hereby overruled.

The City also relies on a second comment in *Skaggs*. Although as noted "harm" was not made an issue in that case, in response to the requester's contention that under KRS 61.878(4) the prosecutor was obliged to segregate non-exempt material from exempt material and to disclose the former, the Court dismissed the contention as "moot" because in the Court's view "the entire file [was] protected from disclosure until the prosecution of the appellant is completed." 844 S.W.2d at 391. The City maintains that this blanket ex-

emption for the prosecutor's file implies that the harm element of the law enforcement exemption was satisfied for the entire file merely by the prospect of a future enforcement action and should likewise be deemed satisfied in this case. Again, however, we are unwilling to read into *Skaggs* implicit decisions on issues not before the *Skaggs* Court and not addressed by it. While the General Assembly has indeed made clear, as *Skaggs* held, that a prosecutor's litigation files are excluded *in toto* from the Act, it has made just as clear by singling them out that the prosecutor's files are, in that regard, unique. Other law enforcement records remain subject to the Act, and as discussed above, the Act requires an agency invoking the "prospective action" prong of the law enforcement exemption to show both that the allegedly exempt records pertain to a prospective enforcement action and that release of the records would harm the agency with respect to that action. If a "prospective action" equates with "harm," as the City contends, the General Assembly would have had no reason to specify both, and *Skaggs* does not imply anything to the contrary.

## II. The Trial Court Did Not Abuse its Discretion When it Denied The Newspaper's Motion For Costs and Fees.

The City also takes issue with the Court of Appeals' suggestion that it could or should have been ordered to pay the newspaper's costs and attorney's fees and could also be subjected to penalties.[8] The Court of Appeals was referring to KRS 61.882(5),

8. The Court of Appeals' Opinion on this score is not entirely clear. At one point the Opinion states that the trial court's "failure to make such an award [of fees and costs] was an abuse of discretion." But in its order of remand it instructs the trial court only "to

award attorney's fees, costs, and/or sanctions to the Enquirer based upon its findings and as it sees fit." Regardless of the extent to which the Court of Appeals may have meant to mandate fees on remand, we agree with the City that any such mandate was inappropriate.

which, to discourage agencies from willfully withholding records in violation of the Act, creates a sanction for doing so:

> Any person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action.... In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record.

More is required to trigger this sanction than the erroneous denial of an ORA request. As we explained in *Bowling,* "[a] public agency's mere refusal to furnish records based on a good faith claim of a statutory exemption, which is later determined to be incorrect, is insufficient to establish a willful violation of the Act.... In other words, a technical violation of the Act is not enough; the existence of bad faith is required." 172 S.W.3d at 343. "Willfulness" and "bad faith" are not necessarily synonymous, of course, but as we indicated in *Bowling,* for the purposes of KRS 61.882(5), "willful" connotes that the agency withheld requested records without plausible justification and with conscious disregard of the requester's rights. We have characterized a trial court's decision on the issue of willfulness as "a finding of fact" and, as such, it is not to be disturbed on appeal "unless clearly erroneous." *Bowling,* 172 S.W.3d at 344. A factual finding is not clearly erroneous, moreover, if it is "supported by substantial evidence," *i.e.,* supported by "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable [persons]."

*Owens–Corning Fiberglas Corporation v. Golightly,* 976 S.W.2d 409, 414 (Ky.1998).

Where "willfulness" is found, the statute still leaves the imposition of fees, costs, and/or penalties to the trial court's discretion. ("Any person who prevails ... may ... be awarded costs."). The factors bearing on that determination are apt to include the extent of the agency's wrongful withholding of records; the withholding's egregiousness; harm to the requester as a result of the wrongful withholding, including the expense of litigating the matter; and the extent to which the request could be thought to serve an important public purpose. *Cf. Davy v. Central Intelligence Agency,* 550 F.3d 1155 (D.C.Cir.2008) (discussing the award of fees and costs under the federal Freedom of Information Act). Only if the trial court has abused its discretion will its fee determination be disturbed on appeal, only, that is, if that determination was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles.". *Miller v. Eldridge,* 146 S.W.3d 909, 914 (Ky.2004) (citation and internal quotation marks omitted).

Advancing its claim for fees before the trial court, the newspaper parsed its request for records into four parts: records (the videotapes) previously released to the public; records made public by being introduced as evidence at trial; records disclosed to McCafferty during discovery; and "the rest of the file." Because, the newspaper argued, the City could have had no valid reason to withhold any of the records in the first three classes—records which had already been disclosed to McCafferty and so could not possibly compromise any future enforcement action against her—the City's withholding of those records amounted to a willful violation of the Act and entitled the newspaper to an award of costs and fees.

Denying the newspaper's claim, the trial court first noted that even if the City were obliged to disclose any duplicates in its file of records the Commonwealth's Attorney introduced into evidence or provided to McCafferty in discovery, the newspaper's request had not identified those records, and the City was not itself bound to make the identification. Its not having produced those records, therefore, was not, on that ground at least, a violation of the Act, willful or otherwise. The trial court agreed with the newspaper that the City's initial refusal to produce the videotapes it had already disclosed to the television station could perhaps in some sense be deemed "willful," but given the City's prompt disclosure of the tapes when the Attorney General ordered their release, and given what the court believed had been the City's valid concern for the McCafferty family's privacy, the court decided that the City's initial withholding of the tapes did not amount to bad faith and so did not justify an award of fees.

■ We are not persuaded that the denial of fees was an abuse of the trial court's discretion. It is not clear, to begin with, that the City lacked a plausible justification for its blanket denial of the newspaper's request, including what may be regarded as its implicit request for the previously released videotapes. The City's position throughout the litigation has been

that, whenever a law enforcement action is prospective, as it was here, KRS 61.878(1)(h) gives all law enforcement records the same blanket protection from disclosure that it gives a prosecutor's records whether an action is prospective or not. As our discussion of *Skaggs* indicates, the City's position, while rejected in this Opinion, was by no means an indefensible one. Since it is certainly arguable (at the very least), that the exemption protecting a prosecutor's files extends to records released during the course of litigation, the City could plausibly maintain that the prior release of its records, likewise, did not waive or abrogate its exemption.[9]

■ We agree with the trial court, furthermore, that even if the disclosure of records by one agency (here the assistant Commonwealth's Attorney) can effect a waiver of another agency's (here the City's) right to assert an exemption, it is not the obligation of the second agency to discover that waiver or to make inquiry as to its scope. The ORA requires the agency to make all reasonable efforts to locate records responsive to the requester's application. KRS 61.872(6) (Official custodian may refuse an application that "places an unreasonable burden" on the agency.). Concomitantly, the requester is required to describe the records he or she seeks so as to make locating them reasonably possible. KRS 61.872(2) ("Official custodian

9. "Waiver," of course, is the unstated premise of the newspaper's asserted right to be given previously released records regardless of whether the records would otherwise be exempt. Under the federal Freedom of Information Act (FOIA), indeed, an exemption merely removes the exempt record from FOIA's mandate and leaves disclosure to agency discretion. If an agency chooses to disclose an exempt record in one context, it may subsequently be deemed to have waived the exemption in another context. *Wolf v. Central Intelligence Agency*, 473 F.3d 370 (D.C.Cir.2007). It is by no means clear, how-

ever, that the same principle applies under our ORA. As does the federal Act, KRS 61.878(1) excludes exempt records from the application of the ORA, but it then provides that exempt records "shall be subject to inspection only upon order of a court of competent jurisdiction." Whether that provision is meant to preclude an agency's waiver of an exemption is not before us, but that possibility is another reason why the City could plausibly have thought that its prior release of records in this case did not preclude its subsequent assertion of the exemption.

may require written application ... describing the records to be inspected."). The agency is responsible only for those records within its own custody and control. *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (discussing similar provisions of the Freedom of Information Act). And it is obligated only to produce responsive records (or to explain why responsive records are exempt); it is not obligated "to respond to questions, requests for research, or ... request[s] to authenticate or verify the contents of a particular document." *Jimenez v. Executive Office for United States Attorneys*, 764 F.Supp.2d 174, 182 (D.D.C.2011) (discussing similar provisions of the Freedom of Information Act and collecting cases); *Landmark Legal Foundation v. Environmental Protection Agency*, 272 F.Supp.2d 59 (D.D.C.2003). To the extent that the newspaper's application can be understood as an implicit request for records released by the prosecutor, whether through discovery or by being introduced at trial, it was asking in effect for the City to identify those records by doing research on the newspaper's behalf beyond the City's own records. We agree with the trial court that the City did not violate the ORA by declining to engage in that exercise.

▋ Finally, even if the City's initial failure to disclose to the newspaper the two videotapes it had previously disclosed to the television station could be deemed a "willful" violation of the Act, the trial court did not abuse its discretion by denying the newspaper's request for fees and costs. As the trial court noted, the newspaper's ORA application did not specify the tapes, but merely requested the entire McCafferty file. The tapes were but a small frac-

tion of that file, and even before the Attorney General opined that they should be released, they were made available to the newspaper at the office of the Circuit Court Clerk along with all the other exhibits introduced at trial. Any detriment to the newspaper, therefore, from the initial withholding of the tapes, or any insult to the Act's basic purpose of openness was *de minimus*, and the trial court could reasonably conclude that the City's minor violation of the Act did not warrant sanctions. Simply put, the trial court did not abuse its discretion in denying the request for fees and cost.

### CONCLUSION

In sum, the Court of Appeals correctly determined that KRS 61.878(1)(h), the law enforcement exemption, does not create a blanket exclusion from the Open Record Act's disclosure provisions for all law enforcement records pertinent to a prospective law enforcement action. Such records are exempt from the Act, rather, only if their disclosure would harm or interfere with a prospective enforcement action in some significant and concrete way.[10] To invoke the exemption, the agency must articulate a factual basis for applying it to particular records or to particular classes of records, and any non-exempt records should be disclosed. To meet its burden, the agency may provide an outline or index of its responsive records indicating meaningful classes into which they have been or might be sorted and then may explain through a custodian's affidavit or testimony how disclosure of particular records or the records in a particular class would harm a prospective enforcement action. The trial court, at a party's request or upon its own motion, may inspect allegedly

---

**10.** We reiterate that County Attorney and Commonwealth's Attorneys' files are treated differently after the 1992 amendment.

exempt records *in camera.* Although the City's response to the newspaper's request for records was inadequate in this case, it has not been shown to have been willfully violative of the Act, and so does not provide a basis for sanctions. To the extent that the Court of Appeals ruled otherwise, its decision is reversed. On remand, the City must make a good faith effort to identify those records responsive to the newspaper's request and either provide them to the newspaper or explain with adequate particularity why, under the Act, they are exempt. Accordingly, we hereby affirm in part and reverse in part the decision of the Court of Appeals and remand the matter to the Campbell Circuit Court for additional proceedings consistent with this Opinion.

MINTON, C.J.; CUNNINGHAM, NOBLE, SCOTT, and VENTERS, JJ., concur.

KELLER, J., not sitting.