CABINET FOR HEALTH AND
FAMILY SERVICES,
Appellant

v.

The TODD COUNTY STANDARD,
INC., Appellee

NO. 2012–CA–000336–MR

Court of Appeals of Kentucky.

RENDERED: DECEMBER
11, 2015; 10:00 A.M.

MODIFIED: MARCH 4, 2016

Rehearing Denied March 4, 2016

Briefs for Appellant: D. Brent Irvin, Mona Womack, Frankfort, Kentucky.

Oral Argument for Appellant: D. Brent Irvin, Frankfort, Kentucky.

Brief for Appellee: Jon F. Fleischaker, Jeremy S. Rogers, Louisville, Kentucky.

Oral Argument for Appellee: Jon F. Fleischaker, Louisville, Kentucky.

BEFORE: MAZE, STUMBO, AND TAYLOR, JUDGES.

*OPINION*

TAYLOR, JUDGE:

Cabinet for Health and Family Services (Cabinet) brings this appeal from a January 18, 2012, Order of the Franklin Circuit Court finding that the Cabinet improperly and willfully denied a request for records in violation of the Open Records Act (ORA).[1] We affirm in part, reverse in part, and remand.

By letter dated February 15, 2011, the Todd County Standard (the Standard) made an open records request to the Cabinet and specifically sought records possessed by the Cabinet concerning a child, A.D.[2] The Standard stated in its request that A.D. died as a result of abuse or

---

1. The Open Records Act is codified in Kentucky Revised Statutes (KRS) 61.870–61.884.

2. The Editor, Ryan Craig, of the Todd County Standard (Standard) actually made the open records request.

neglect and that records concerning A.D. were subject to disclosure under the child fatality provision of Kentucky Revised Statutes (KRS) 620.050(12)(a).[3]

The Cabinet failed to timely respond to the February 15, 2011, open records request. On February 28, 2011, the Standard then sought review of its request by the Kentucky Attorney General as permitted by KRS 61.880(2)(a).

The Cabinet untimely responded to the Standard's open records request by letter dated March 3, 2011.[4] Therein, the Cabinet stated that it possessed "no records concerning [A.D.'s] fatality because her fatality was not the result of abuse or neglect." Consequently, the Cabinet produced no records relating to A.D. for review by the Standard.

In response to the Standard's review request, by letter dated April 5, 2011, the Attorney General forwarded to the Cabinet specific questions to glean more information about the Cabinet's dealings with A.D. and her family in order to "facilitate our [Attorney General's] review." However, the Cabinet merely responded again that it possessed no records concerning the death of A.D. and stated that it was not "required to offer an explanation for the nonexistence of records." Consequently, the Cabinet declined to offer written responses to the Attorney General's questions.

In 11–ORD–074, rendered May 17, 2011, the Attorney General determined that the Cabinet violated the ORA both procedurally and substantively:

We will not belabor the procedural issues this appeal presents. KRS

61.880(1) requires a public agency to notify the requester of the decision whether it will comply with an open records request "within three (3) days, excepting Saturdays, Sundays, and legal holidays" of receipt of the request. The only exception to this statutory requirement is found at KRS 61.872(5) and may only be invoked if the requested record "is in active use, in storage or not otherwise available." That statute nevertheless requires a written response, within three business days, along with "a detailed explanation of the cause ... for further delay...." It was not until "Mr. Craig made Cabinet officials aware that the response had not been made by filing this appeal and providing a copy of same to the Cabinet's Office of Communications" that a response was finally issued. The fact that the individual responsible for responding was out of the office, and the person asked to complete the task became ill, has no bearing on this issue. The Open Records Act does not recognize employee absence or illness as a legitimate basis for failure to discharge the duties imposed by KRS 61.880(1). It remained the Cabinet's duty to issue a timely written response, and its failure to do so constituted a violation of KRS 61.880(1).

Substantively, the Cabinet's response was also deficient. Kentucky's courts have struggled with the dilemma posed when agencies deny a record's existence rather than claiming a statutory exemption as the basis for denial. The courts recognized, on the other hand, that "allowing public agencies to avoid judicial

**3.** The Standard made another open records request on March 17, 2011, and requested the same records; the Cabinet formally denied the request by indicating that it possessed no such records by letter dated March 23, 2011. That open records request was not appealed.

**4.** Kentucky Revised Statutes 61.880 requires the public agency to respond to an open records request within three working days upon receipt of the request.

review by denying a record's existence ... remove[s] accountability from the open records process," and, on the other, that public agencies may be unreasonably burdened by "the unfettered possibility of fishing expeditions for hoped-for but nonexistent records...." *Bowling v. Lexington–Fayette Urban County Government,* 172 S.W.3d 333, 341 (Ky.2005). The courts resolved the dilemma by determining that "before a complaining party is entitled to ...; a hearing [to disprove the agency's denial of the existence of records,] he or she must make a *prima facie* showing that such records do exist."

At the administrative level, a record's existence can be presumed where statutory authority for its existence has been cited or can be located. KRS 61.880(2)(a) restricts the Attorney General's review of an open records dispute to a written record consisting of the request and denial. 40 KAR 1:030 Section 2 provides for a supplemental response to be considered in resolving the dispute. KRS 61.880(2)(c) authorizes the Attorney General to "request additional documentation from the agency for substantiation." None of these provisions permit a hearing on the existence or nonexistence of a public record. To insure that the Open Records Act is not "construed in such a way that [it] become[s] meaningless or ineffective," *Bowling* at 341, we believe the existence of a statute, regulation, or case law directing the creation of the requested record creates a presumption of the record's existence, but this presumption is rebuttable. The agency can overcome the presumption by explaining why the "hoped-for record" does not exist.

. . . .

In the appeal before us, a nine-year-old child died under circumstances suggesting abuse and/or foul play. The child was alleged to have been under the Cabinet's care, and this allegation appeared in the record on appeal. KRS 620.050(1) requires the Cabinet "to conduct an internal review of any case where child abuse or neglect resulted in a child fatality or near fatality" if the Cabinet "had prior involvement with the child or family." Nevertheless, the record on appeal from the Cabinet's March 3 denial of Mr. Craig's February 15 request was devoid of any explanation for the nonexistence of responsive records. Under these circumstances, the Cabinet was obligated to provide such an explanation in its initial denial. Failing that, it was obligated to provide written responses to our KRS 61.880(2)(c) inquiries to substantiate its position. Because the Cabinet for Health and Family Services' response to Mr. Craig's request was, at best, "limited and perfunctory," we find that it was substantially, as well as procedurally deficient.

11–ORD–074 at 3–5 (footnote omitted).

On July 14, 2011, the Standard filed a complaint against the Cabinet in the Franklin Circuit Court seeking enforcement of the Attorney General's Opinion (11–ORD–074). The Standard claimed that the Cabinet violated the ORA by failing to timely respond to its open records request and by failing to affirmatively establish that it did not possess records relating to A.D. Citing to KRS 61.880(5)(b), the Standard pointed out that the Cabinet also failed to timely appeal the adverse opinion of the attorney general (11–ORD–074). Consequently, the Standard stated that the Attorney General's Opinion now has the "force and effect of law" and must be enforced by the court. Complaint at 5.

In its answer, the Cabinet for the first time admitted that it possessed records

concerning A.D. but asserted that such records were not accessible under the ORA. The Cabinet claimed that A.D.'s death was not a result of abuse or neglect by a parent or guardian; thus, the Cabinet did not conduct "an investigation as a fatality." The Cabinet also filed a motion to submit all records pertaining to A.D. to the circuit court for an *in camera* review. The court granted the motion and reviewed the records.

The Standard filed a motion for summary judgment arguing that the Attorney General's Opinion (11-ORD-074) must be enforced as the Cabinet failed to appeal same, thus compelling disclosure of the records pertaining to A.D. The Cabinet responded and maintained that the records were not accessible in an enforcement action because the Attorney General never reached the "merits of whether the Cabinet had to turn over all its records." Response to Summary Judgment at 8.

By Opinion and Order entered November 7, 2011, the circuit court granted the Standard's motion for summary judgment. The circuit court determined that the Cabinet improperly failed to respond to the Standard's open records request. The circuit court observed that the Cabinet also failed to "appeal" the Attorney General's opinion within thirty days and that under KRS 61.880(5)(b) the opinion now has the full force of law and is subject to enforcement by the court. As an enforcement action, the court believed that the Cabinet was required to produce the records and could not "for the first time" raise arguments that the records were exempt under the ORA. Opinion and Order at 14. The court held that its duty was "to enforce the

Attorney General's determination ... and not to provide an additional forum ... to raise defenses or exemptions that were not raised" before the Attorney General. Opinion and Order at 13–14. Nonetheless, the circuit court alternatively concluded that the records related to A.D. were accessible under KRS 620.050(12)(a). The court reasoned that A.D.'s death was the result of child abuse or neglect by a parent.[5] The circuit court also "direct[ed] that the public records provided to the Court for its *in camera* review ... shall be made available for public inspection." Opinion and Order at 19.

Subsequently, by order entered January 18, 2012, the circuit court found that the Cabinet "willful[ly]" violated the ORA by misrepresenting that it possessed no records as to A.D. As a result, the circuit court awarded $9,893.51 in attorney's fees and $175.51 in costs to the Standard. The court also imposed $6,625 in statutory penalties against the Cabinet pursuant to KRS 61.882(5).[6] This appeal follows.

█ To begin, summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky.1991). All facts and inferences from the record are to be viewed in a light most favorable to the nonmoving party. *Steelvest, Inc.*, 807 S.W.2d 476. Our review proceeds accordingly.

The Cabinet contends that the circuit court erred by rendering summary judgment and ordering release of the records pertaining to A.D. under the ORA. Specifi-

---

5. A.D. was murdered by her older sibling. However, the circuit court found that A.D.'s adoptive mother knew that the older sibling was physically violent toward A.D. and did nothing to protect A.D.

6. The penalties were calculated by assessing a maximum penalty of $25, multiplied by the number of days that the Standard was denied the records, 265 (265 × 25 = $6,625).

cally, the Cabinet argues that the court erroneously enforced the Attorney General's Opinion. In the Attorney General's Opinion, the Cabinet maintains that the Attorney General never determined that the records as to A.D. were accessible under the ORA; thus, the Cabinet asserts that it was error for the court to enforce the Attorney General's Opinion by ordering release of the records. For the following reasons, we disagree.

Under the ORA, KRS 61.880 provides for review by the Kentucky Attorney General of a public agency's refusal to provide records or to respond to an open records request. KRS 61.880 provides:

(1) If a person enforces KRS 61.870 to 61.884 pursuant to this section, he shall begin enforcement under this subsection before proceeding to enforcement under subsection (2) of this section. Each public agency, upon any request for records made under KRS 61.870 to 61.884, shall determine within three (3) days, excepting Saturdays, Sundays, and legal holidays, after the receipt of any such request whether to comply with the request and shall notify in writing the person making the request, within the three (3) day period, of its decision. An agency response denying, in whole or in part, inspection of any record shall include a statement of the specific exception authorizing the withholding of the record and a brief explanation of how the exception applies to the record withheld. The response shall be issued by the official custodian or under his authority, and it shall constitute final agency action.

(2) (a) If a complaining party wishes the Attorney General to review a public agency's denial of a request to inspect a public record, the complaining party shall forward to the Attorney General a copy of the written request and a copy of the written response denying inspection. If the public agency refuses to provide a written response, a complaining party shall provide a copy of the written request. The Attorney General shall review the request and denial and issue within twenty (20) days, excepting Saturdays, Sundays and legal holidays, a written decision stating whether the agency violated provisions of KRS 61.870 to 61.884.

(b) In unusual circumstances, the Attorney General may extend the twenty (20) day time limit by sending written notice to the complaining party and a copy to the denying agency, setting forth the reasons for the extension, and the day on which a decision is expected to be issued, which shall not exceed an additional thirty (30) work days, excepting Saturdays, Sundays, and legal holidays. As used in this section, "unusual circumstances" means, but only to the extent reasonably necessary to the proper resolution of an appeal:

1. The need to obtain additional documentation from the agency or a copy of the records involved;

2. The need to conduct extensive research on issues of first impression; or

3. An unmanageable increase in the number of appeals received by the Attorney General.

(c) On the day that the Attorney General renders his decision, he shall mail a copy to the agency and a copy to the person who requested the record in question. The burden of proof in sustaining the action shall rest with the agency, and the Attorney General may request additional documentation from the agency for substantiation. The Attorney General may also re-

quest a copy of the records involved but they shall not be disclosed.

(3) Each agency shall notify the Attorney General of any actions filed against that agency in Circuit Court regarding the enforcement of KRS 61.870 to 61.884. The Attorney General shall not, however, be named as a party in any Circuit Court actions regarding the enforcement of KRS 61.870 to 61.884, nor shall he have any duty to defend his decision in Circuit Court or any subsequent proceedings.

(4) If a person feels the intent of KRS 61.870 to 61.884 is being subverted by an agency short of denial of inspection, including but not limited to the imposition of excessive fees or the misdirection of the applicant, the person may complain in writing to the Attorney General, and the complaint shall be subject to the same adjudicatory process as if the record had been denied.

(5) (a) A party shall have thirty (30) days from the day that the Attorney General renders his decision to appeal the decision. An appeal within the thirty (30) day time limit shall be treated as if it were an action brought under KRS 61.882.

(b) If an appeal is not filed within the thirty (30) day time limit, the Attorney General's decision shall have the force and effect of law and shall be enforceable in the Circuit Court of the county where the public agency has its principal place of business or the Circuit Court of the county where the public record is maintained.

Under KRS 61.880(5)(a), an attorney general's opinion "shall" be "appeal[ed]" to a circuit court within thirty days of rendering the opinion. If a party fails to timely appeal, KRS 61.880(5)(b) is clear; the attorney general's opinion "shall have the full force and effect of law and shall be enforceable in the Circuit Court...." In such an enforcement action, the circuit court does not reach the merits of the case under the ORA but merely enforces the attorney general's opinion. Recently, our Supreme Court commented upon KRS 61.880(5):

> Once the Attorney General renders a decision either party then has thirty days within which to bring an action pursuant to KRS 61.882(3) in the Circuit Court. Although the statutes refer to this second type of Circuit Court proceeding as an "appeal" of the Attorney General's decision, it is an "appeal" only in the sense that if a Circuit Court action is not filed within the thirty-day limitations period, the Attorney General's decision becomes binding on the parties and enforceable in court.

*City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842, 848 (Ky.2013).

In this case, the Cabinet responded to the Standard's open records request by claiming it possessed no records pertaining to A.D.'s fatality. The Standard then sought review with the Attorney General, and the Attorney General sent the Cabinet a request to provide written responses to the following questions:

1. Did the Cabinet for Health and Family Services "ha[ve] prior involvement with" [A.R.D.] her biological family, or her adoptive family? Did the Cabinet play a role in [A's] adoption?

2. If so, did the Cabinet conduct an internal review, and prepare a summary of the case, per KRS 620.050(1)(b)? Does the Cabinet have any obligations under KRS 620.050(12) if it did not have any involvement with the deceased child or her family?

3. If the Cabinet did not conduct a review and produce a summary, why did it not do so?

4. Even if no investigation was conducted, or summary prepared, did the Cabinet undertake a search for records in its custody relating to [A.R.D.], her biological family, or her adoptive family, prior to her death?

5. Please describe the search method employed by the Cabinet in attempting to locate records responsive to Mr. Craig's request?

April 5, 2011, Letter. The Cabinet declined to provide written responses to these questions but rather merely restated that it possessed no records as to A.D.'s fatality. Thereafter, the Attorney General rendered an Opinion (11–ORD–074) concluding that the Cabinet procedurally and substantively violated the ORA.

Upon review of the Attorney General's Opinion, it is true that the Attorney General did not determine that the records were, in fact, accessible under the ORA. However, the Attorney General was prevented by the Cabinet from reaching this issue. The Cabinet repeatedly claimed to the Attorney General and to the Standard that it possessed no records concerning A.D.'s fatality. It was only after the enforcement action was filed in the circuit court that the Cabinet admitted to even possessing records as to A.D. Additionally, the Cabinet blatantly refused to respond to the Attorney General's specific questions as to the Cabinet's prior involvement with A.D. or with her family. It is highly probable that if the Cabinet had responded truthfully to these questions the existence of records relating to A.D. would have been revealed. By refusing to respond to the Attorney General's questions, the Cabinet certainly frustrated the Attorney General's statutory review under KRS 61.880 and also the timely release of records under the ORA.

Under the unique facts of this case, we hold that the circuit court properly enforced the Attorney General's Opinion by ordering production of records relating to A.D. pursuant to KRS 61.880(5)(b). The Cabinet cannot benefit from intentionally frustrating the Attorney General's review of an open records request; such result would subvert the General Assembly's intent behind providing review by the Attorney General under KRS 61.880(5). Thus, we conclude that the circuit court properly rendered summary judgment enforcing the Attorney General's Opinion by ordering production of records concerning A.D.

■ The Cabinet next asserts that the circuit court erred by awarding the Standard attorney's fees of $9,893.51 and costs of $175.51 and by imposing penalties against the Cabinet in the amount of $6,625.

Under the ORA, KRS 61.882(5) governs the award of attorney's fees, costs, and penalties:

Any person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees, incurred in connection with the legal action. If such person prevails in part, the court may in its discretion award him costs or an appropriate portion thereof. In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record. Attorney's fees, costs, and awards under this subsection shall be paid by the

agency that the court determines is responsible for the violation.

To be entitled to attorney's fees, costs, and penalties, the circuit court must find that the agency "willfully" denied access to records in violation of the ORA. The Supreme Court held that willful "connotes that the agency withheld requested records without plausible justification and with conscious disregard of the requester's rights." *City of Fort Thomas,* 406 S.W.3d at 854. And, willful is a finding of fact that will only be disturbed on appeal if clearly erroneous. *Bowling v. Lexington–Fayette Urban Cnty. Gov't,* 172 S.W.3d 333 (Ky.2005).

In this case, the circuit court found that the Cabinet acted willfully in denying the Standard's open records request in violation of the ORA:

> [T]he Cabinet's actions denying public disclosure of records regarding [A.D.] clearly constitute a willful violation of the Kentucky Open Records Act. The Cabinet maintains it was appropriate to misrepresent to the Standard that they possessed no documents because the Standard had requested "public records" relating to her instead of "all records." The Kentucky Supreme Court has found "an open records request should not require the specificity and cunning of a carefully drawn set of discovery requests, so as to outwit narrowing legalistic interpretations by the government." *Com. v. Chestnut,* 250 S.W.2d 655, 662 (Ky.2008). The Court finds the Cabinet's actions were an attempt at misdirection and obfuscation designed to prevent public disclosure in the same manner condemned by the Kentucky Supreme Court in *Chestnut.* Therefore, the Court finds that the nondisclosure was intentional and willful.

January 18, 2012, Order, at 3.

This court has already commented on the Cabinet's actions that frustrated review by the attorney general. Upon the whole of this case, we cannot conclude that the circuit court's finding that the Cabinet acted willfully to be clearly erroneous. Consequently, we hold that the circuit court did not err by awarding attorney's fees, costs, and penalties under KRS 61.882(5).

The Cabinet also maintains that the circuit court erred by ordering post-judgment interest pursuant to KRS 360.040. The Cabinet argues that it is entitled to immunity, thus barring the imposition of post-judgment interest under KRS 360.040.

KRS 360.040 reads:

> A judgment shall bear twelve percent (12%) interest compounded annually from its date. A judgment may be for the principal and accrued interest; but if rendered for accruing interest on a written obligation, it shall bear interest in accordance with the instrument reporting such accruals, whether higher or lower than twelve percent (12%). Provided, that when a claim for unliquidated damages is reduced to judgment, such judgment may bear less interest than twelve percent (12%) if the court rendering such judgment, after a hearing on that question, is satisfied that the rate of interest should be less than twelve percent (12%). All interested parties must have due notice of said hearing.

As a state agency is imbued with governmental immunity when performing a governmental function, KRS 360.040 generally "does not apply to state agencies absent an explicit declaration by the legislature or an explicit contract provision to that effect." *Bradley v. Com.,* 301 S.W.3d 27, 30 (Ky. 2009); *see also Com., Dept. of Transp., Bureau of Highways v. Lamb,* 549 S.W.2d 504 (Ky.1976).

It is undisputed that the Cabinet is a state agency entitled to the protection of

governmental immunity. *Stratton v. Com.*, 182 S.W.3d 516 (Ky.2006). In this case, the Cabinet was performing governmental functions, as opposed to propriety functions, in responding to the Standard's open records requests and in undertaking subsequent actions related thereto. Consequently, the Cabinet is protected by governmental immunity; therefore, the post-judgment interest provision of KRS 360.040 is only applicable if an "explicit" statutory enactment authorizes same.

In their appellate briefs, neither party has cited this Court to any statutory enactment authorizing post-judgment interest per KRS 360.040 against the Cabinet upon an award of attorney's fees, costs, and statutory penalties under the ORA. Likewise, this Court has found no such statutory enactment or legal authority. For this reason, we hold that the circuit court committed error by imposing post-judgment interest upon its award of attorney's fees, costs, and statutory penalties. We, thus, reverse the circuit court's imposition of post-judgment interest.

We view any remaining contentions of error as moot or without merit.

In sum, we hold that the circuit court properly rendered summary judgment and ordered production of the documents relating to A.D. held by the Cabinet. We also conclude that the circuit court's award of attorney's fees, costs, and penalties under KRS 61.882(5) was proper, but we reverse and remand the circuit court's imposition of post-judgment interest on this award.

For the foregoing reasons, the order of the Franklin Circuit Court is affirmed in part, reversed in part, and remanded.

ALL CONCUR.

