RENDERED: NOVEMBER 10, 2022; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2021-CA-1120-MR

COURIER-JOURNAL, INC.                                    APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.    HONORABLE ANGELA MCCORMICK BISIG, JUDGE
ACTION NO. 20-CI-005707

SHIVELY POLICE DEPARTMENT                               APPELLEE

OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CALDWELL AND K. THOMPSON, JUDGES.

THOMPSON, K., JUDGE: The Courier-Journal, Inc. appeals from the partial denial of its motion for summary judgment and partial grant of summary judgment to the Shively Police Department (the SPD) by the Jefferson Circuit Court regarding the failure of the SPD to make disclosures pursuant to the Open Records Act (the ORA) on the basis that it would cause harm to an ongoing criminal

investigation. As the anticipated harms for denying the disclosure may have lapsed during the pendency of case, and the other grounds for denying the release of the records do not permit the wholesale withholding of these records, we vacate and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Late in the evening on July 27, 2020, the SPD received a report of a possible domestic violence incident between a man and a woman near a light-colored Nissan pickup truck parked outside of a closed restaurant in the 4400 block of Dixie Highway. Two SPD officers, Christopher Nelson and Thomas Breitmeyer, responded to the report, one in an unmarked vehicle and one in an SPD patrol car.

When the officers' vehicles approached the truck, the driver drove away at a high rate of speed traveling north on Dixie Highway; the officers pursued. About a mile later, the truck crossed into the southbound lanes but continued to drive north. The truck ran a red light and struck a car traveling eastbound on Crums Lane, injuring the occupants and ultimately killing three of them. The truck then struck a second vehicle, causing minor injuries. The two occupants of the truck took off on foot, with the seventeen-year-old passenger (juvenile) quickly apprehended.

On July 28, 2020, the SPD issued a press release stating that the officers pursued the truck because they believed the female victim mentioned in the domestic violence report may have been in the truck and in need of assistance. On July 29, 2020, an SPD spokesperson confirmed there were no active internal affairs investigations into the incident as the officers had properly followed police policies in pursuing the truck.

The man believed to be the driver of the truck, Guy L. Brison, Jr., was arrested on July 31, 2020.

The Courier-Journal submitted an open records request for the SPD's vehicle pursuit policies, which the SPD posted online. This apparently raised concerns with the Courier-Journal staff about whether the SPD officers had properly complied with the SPD's vehicle pursuit policies and prompted further open record requests that are at issue in this appeal.

On August 10, 2020, the Courier-Journal submitted an open records request relating to the incident seeking the following: (1) Computer Aided Dispatch (CAD) reports for services calls; (2) 911 calls; (3) audio communication between dispatch, the responding officers, and any other officers or supervisory personnel; (4) dashcam and bodycam footage; and (5) incident or accident reports.[1]

---

[1] These were requested via five separate emails sent on the same day, but the parties have treated this as one multipart request.

Thirty-six minutes later, the SPD denied the request for these records, explaining its reasoning in full as follows: "As there is an active criminal case regarding this incident, all of the above request are denied under the following exclusion rule: [Kentucky Revised Statutes (KRS)] 61.878 subsection (1)(h)[.]"[2]

In late August 2020, Brison was indicted on multiple counts, including three counts of murder and nine counts of wanton endangerment.[3]

On October 5, 2020, the Courier-Journal chose to file a complaint with the circuit court seeking an injunction ordering the immediate disclosure of the requested records, and an award of reasonable attorney fees, costs, and statutory penalties. The Courier-Journal argued the SPD's response failed to show a concrete risk of harm to the SPD, failed to provide an adequate basis for withholding the records, and failed to disclose non-exempt responsive records.

The SPD answered on October 31, 2020, raising three grounds to justify withholding the records from disclosure, its original ground and two new grounds: (1) pursuant to KRS 61.878(1)(h), it stated that "the investigation is still

---

[2] We have omitted the spaces given to separate paragraphs in this quotation and the quotation to the full text of KRS 61.878(1)(h).

[3] This is according to the unofficial CourtNet record in *Commonwealth v. Brison*, No. 20-CR-001392, which states that the indictment was filed in the Jefferson Circuit Court on August 25, 2020, and Brison was arraigned on September 18, 2020. The parties have not discussed when Brison was indicted, but the SPD has confirmed he is in custody and is currently awaiting trial. We do not know if any charges were sought against juvenile or if there was even a basis for seeking any.

ongoing, there has been no trial, no conviction and no sentence, the requested records have been presented to the Commonwealth's Attorney, and the exemption for production of SPD records . . . should remain intact until [the] enforcement action is completed or a decision is made to take no action"; (2) pursuant to KRS 61.878(1)(a), it stated "the release of any dashcam or bodycam footage depicting the scene of a fatal accident would certainly and clearly constitute an unwarranted invasion of personal privacy particularly to the family members of the deceased victims"; and (3) pursuant to KRS 61.878(1)(l) which exempts records from disclosure if there is another statutory basis to withhold them, here KRS 17.150(2), which the SPD claimed "clearly prevent[s] any early release of the requested records prior to the completion of prosecution of the case" noting "a showing of concrete harm . . . to the agency in the prospective action . . . is not necessary or required under [this] exemption[.]"

All three grounds were supported by an affidavit from Shively Chief of Police, Colonel Kevin Higdon (Chief Higdon), which stated in relevant part:

> 4. That the SPD now submits that the requested records were collected and compiled by the SPD as necessary evidence required for the prosecution of this case, and which records have been presented to the Commonwealth's Attorney [thus qualifying for exemption under KRS 61.878(1)(h) due to an "active criminal case regarding the incident"]. The requested records which are being withheld are a part of the evidence that will be used for the Commonwealth[']s Attorney to make a decision whether or not further

-5-

prosecutorial action will be taken . . . following a criminal investigation.

5. That the release of these records poses a concrete risk of harm to the SPD and Commonwealth's Attorney in the prospective action and may hinder the agency's investigation.

6. That any 911 calls place[d] to SPD relating to the incident would contain information from a caller who would likely be interviewed by SPD in its investigation, and an early release of a 911 call could compromise a witness and recollection of what transpired during the incident and would have a negative impact on the veracity of witness statements relating to this incident and will ultimately taint the grand jury pool if an indictment is sought by the Commonwealth's Attorney.

7. That, likewise, an early release of the audio recordings, CAD reports, dashcam bodycam footage and incident accident reports would harm the agency by compromising witness recollections and statements and tainting the grand jury in this prospective law enforcement action and even more so if a witness or potential grand juror is exposed to a release of only a portion of the evidence withheld thus tainting and compromising their impartiality in this prospective law enforcement action.

8. That, in addition to KRS 61.878(1)(h), a release of the dashcam bodycam footage reflecting footage of a fatal accident would fall within the privacy exemption stated in KRS 61.878(1)(a) where public disclosure of information of a personal nature would constitute a clearly unwarranted invasion of privacy.

9. That the requested records should be exempted pursuant to KRS 61.878(1)(l) as public records or information the disclosure of which is prohibited or

-6-

restricted or otherwise made confidential by enactment of the General Assembly . . . .

10. That, together with KRS 61.878(1)(l), KRS 17.150(2) prevents release of the requested records: Intelligence and investigative reports maintained by criminal justice agencies are subject to public inspection if prosecution is completed or a determination not to prosecute has been made.

11. That the requested records should be exempted pursuant to KRS 61.878(1)(h) posing a concrete risk of harm to the agency upon early release, KRS 61.878(1)(a) as a matter of personal privacy concerning the dashcam bodycam footage and as a whole pursuant to KRS 61.878(1)(l) and 17.150(2) until prosecution is completed or a determination not to prosecute has been made.

In June 2021, the parties filed cross-motions for summary judgment. On September 3, 2021, the circuit court granted the SPD's motion for summary judgment regarding the August 10, 2020, open records requests (thereby also denying the Courier-Journal's motion for summary judgment in its favor on this issue).[4]

The circuit court found that the SPD met its burden of demonstrating that the records requested by the Courier-Journal fall within the law enforcement

---

[4] During a hearing regarding these cross-motions, the Courier-Journal noted the SPD denied the Courier-Journal's later July 20, 2021, open records request. It does not appear that the denial of this later open records request was properly before the circuit court, but nonetheless it issued a ruling in the Courier-Journal's favor regarding this matter but declined to award sanctions for a willful violation. This portion of the ruling is why the motions for summary judgment were each granted in part and denied in part. We do not discuss this portion of the ruling further as the SPD complied with the circuit court's order and the SPD did not file a cross-appeal regarding the portion of its motion for summary judgment which was denied.

agency records exemption set forth in KRS 61.878(1)(h) based on Chief Higdon's affidavit which articulated factual bases for why release of the records would pose a concrete risk of harm to law enforcement actions and satisfied its burden. Because it found this exemption applied, the circuit court declined to consider the other two exemptions the SPD relied upon.

On appeal the Courier-Journal argues that the SPD failed to meet its burden of proving that the records it withheld were exempt from disclosure under the ORA under the three grounds raised, seeks a determination that SPD committed a willful violation of the ORA by entirely withholding these records, and requests that we remand for the circuit court to determine the appropriate amount of attorney fees, costs, and statutory penalties to award.

## STANDARD OF REVIEW AND GENERAL
## REQUIREMENTS OF THE OPEN RECORDS ACT

When an agency denies an ORA request, the requester may properly file an original action pursuant to KRS 61.882 with the circuit court seeking relief. *City of Fort Thomas v. Cincinnati Enquirer*, 406 S.W.3d 842, 848 (Ky. 2013). The circuit court's review is *de novo*. *Louisville/Jefferson Cnty. Metro Government v. Courier-Journal, Inc.*, 605 S.W.3d 72, 76 (Ky. App. 2019). While the Attorney General's opinions are highly persuasive, our review of questions of law and statutory interpretation is *de novo*. *Id.* at 78.

-8-

KRS 61.878(1) provides that specific types of records are excluded from disclosure under the ORA. However, KRS 61.878(4) then provides: "If any public record contains material which is not excepted under this section, *the public agency shall separate the excepted and make the nonexcepted material available for examination*." (Emphasis added.)

> Where the custodian of requested records believes that those records are not subject to disclosure, the provisions of KRS 61.880(1) direct as follows:
>
>> An agency response denying, in whole or in part, inspection of any record shall include a statement of the specific exception authorizing the withholding of the record *and a brief explanation* of how the exception applies to the record withheld. (Emphasis added.)
>
>> The language of the statute directing agency action is exact. It requires the custodian of records to provide particular and detailed information in response to a request for documents.

*Edmondson v. Alig*, 926 S.W.2d 856, 858 (Ky. App. 1996).

"[T]he [Open Records] Act requires that all exceptions to production . . . must be strictly construed[, with] the burden of establishing that an exception applies rest[ing] upon the agency resisting disclosure[.]" *Courier-Journal*, 605 S.W.3d at 76. *See* KRS 61.871; *Hardin Cnty. Sch. v. Foster*, 40 S.W.3d 865, 868 (Ky. 2001). Therefore, "[f]or each document [the record custodian] claims can be properly withheld from production pursuant to the ORA,

the [record custodian] ha[s] the burden to prove that the document fits within an exception by identifying the specific ORA exception and explaining how it applies." *University of Kentucky v. Kernel Press, Inc.*, 620 S.W.3d 43, 55 (Ky. 2021). "The agency's explanation must be detailed enough to permit the court to assess its claim and the opposing party to challenge it." *Kentucky New Era, Inc. v. City of Hopkinsville*, 415 S.W.3d 76, 81 (Ky. 2013).

"Competing interests are at the core of every ORA case and judicial resolution – the eventual balancing of those interests within the parameters laid out by the legislature – is only achieved when the public agency complies fully with its statutory obligations and [Kentucky Supreme Court] precedent." *Kernel Press, Inc.*, 620 S.W.3d at 53.

## ISSUES ON APPEAL

I.     **Does KRS 61.878(1)(h) Justify Withholding the SPD Records on the Basis that their Release Would Harm the Prospective Law Enforcement Action?**

The Courier-Journal argues that the SPD could not adopt a blanket exemption for its records pursuant to KRS 61.878(1)(h) and instead had to show a concrete risk of harm to the ongoing investigation/prosecution but failed to do this when it summarily denied the Courier-Journal's open records request. While the Courier-Journal acknowledges that after it filed its complaint the SPD

-10-

supplemented its denial based on KRS 61.878(1)(h) with an affidavit from Chief

Higdon, the Courier-Journal argues:

> Chief Higdon's affidavit contains no *facts*. It is replete
> with rote recitals of statutory language and vague
> assertions of potential harm that could be caused by
> release of the requested records that are so generic they
> could be applied to any law enforcement investigation. It
> adds nothing of substance to SPD's initial denial.

The Courier-Journal argues that Chief Higdon speculates about potential harm and

"does not even assert there are witnesses left to be interviewed whose recollections

could be 'compromised'" and the SPD "cannot credibly contend now – more than

a year and a half after the chase – that there are witnesses it hasn't gotten around to

interviewing." The Courier-Journal argues that the SPD's denial is an improper

"blanket exemption for police files" which the Kentucky Supreme Court has

repeatedly condemned and is at odds with the ORA's demand that its exceptions be

"strictly construed." The Courier-Journal requests that the SPD be compelled "to

produce the records immediately."

KRS 61.878(1)(h) excludes certain records of law enforcement

agencies from disclosure as follows:

> *Records of law enforcement agencies* or agencies
> involved in administrative adjudication *that were
> compiled in the process of detecting and investigating
> statutory* or regulatory *violations if the disclosure of the
> information would harm the agency* by revealing the
> identity of informants not otherwise known or *by
> premature release of information to be used in a*

-11-

*prospective law enforcement action* or administrative adjudication. Unless exempted by other provisions of KRS 61.870 to 61.884, public records exempted under this provision shall be open after enforcement action is completed or a decision is made to take no action; however, records or information compiled and maintained by county attorneys or Commonwealth's attorneys pertaining to criminal investigations or criminal litigation shall be exempted from the provisions of KRS 61.870 to 61.884 and shall remain exempted after enforcement action, including litigation, is completed or a decision is made to take no action. *The exemptions provided by this subsection shall not be used by the custodian of the records to delay or impede the exercise of rights granted by KRS 61.870 to 61.884*[.]

(Emphasis added.)

When an agency declines to make a disclosure under the law enforcement "prospective action" prong under KRS 61.878(1)(h): "the agency must show (1) that the records to be withheld were compiled for law enforcement purposes; (2) that a law enforcement action is prospective; and (3) that premature release of the records would harm the agency in some articulable way." *City of Fort Thomas*, 406 S.W.3d at 850 (footnote omitted).

We are mindful that an asserted presumption of harm by law enforcement "– a presumption in effect of non-disclosure – would turn on its head the [ORA's] basic presumption of openness." *Id.*

It would also, by creating a blanket exemption for police files regardless of their contents, run totally counter to the General Assembly's directive that the exemptions from disclosure be "strictly construed." KRS 61.871.

-12-

> Blanket exemptions are also contrary to KRS 61.878(4), which provides that "[i]f any public record contains material which is not excepted under this section [KRS 61.878], the public agency shall separate the excepted and make the unexcepted material available for examination."

*Id. See Kernel Press, Inc.*, 620 S.W.3d at 55-56 (unequivocally stating that an "initial, single-paragraph assertion of a blanket exemption to disclosure of the entire [investigative file] was wholly insufficient" and "[t]he boilerplate paragraph – this but if not this then that – used for every withheld document was wholly unacceptable.").

> Therefore, in *City of Fort Thomas*, the Court held:
>
> the law enforcement exemption is appropriately invoked only when the agency can articulate a factual basis for applying it, only, that is, when, because of the record's content, its release poses a concrete risk of harm to the agency in the prospective action. A concrete risk, by definition, must be something more than a hypothetical or speculative concern.

406 S.W.3d at 851. However, the Court further explained:

> Our holding does not mean that the agency is obliged in all cases to justify non-disclosure on a line-by-line or document-by-document basis. *At least with respect to voluminous ORA requests*, such as the newspaper's request in this case, *it is enough if the agency identifies the particular kinds of records it holds and explains how the release of each assertedly exempt category would harm the agency in a prospective enforcement action. Cf. Lesher*, 945 N.Y.S.2d 214, 968 N.E.2d at 457 ("The agency must identify the generic kinds of documents for which the exemption is claimed,

-13-

and the generic risks posed by disclosure of these categories of documents. Put slightly differently, the agency must still fulfill its burden under Public Officers Law § 89(4)(b) to articulate a factual basis for the exemption."). Our holding does mean, of course, that even if the agency adopts this generic approach it must itself identify and review its responsive records, release any that are not exempt, and assign the remainder to meaningful categories. A category is meaningful if it "allows the court to trace a rational link between the nature of the document and the alleged likely [harm to the agency]." *Bevis v. Department of State*, 801 F.2d 1386, 1389 (D.C. Cir. 1986).

*Id.* (emphasis added) (footnote omitted). "[T]he court must hold the agency to its burden of proof by insisting that the agency make a sufficient factual showing – by affidavit; by oral testimony; or, if necessary to preserve the exemption, by *in camera* production – to justify the exemption." *Id.* at 852.

We note that the original denial of the records by the SPD was a blanket denial that categorically declared these records off limits due to the pending criminal investigation, citing KRS 61.878(1)(h) and not providing any further explanation. We have no difficulty in declaring that this original denial was improper. As was the case in *Edmondson*, 926 S.W.2d at 858, the "limited and perfunctory response" by the record custodian through a one-line rejection of an open records request with a reference to a statutory exemption did not "even remotely compl[y] with the requirements of the Act – much less . . . amount[] to substantial compliance."

-14-

However, after the Courier-Journal filed its action with the circuit court, the SPD's answer and accompanying affidavit by Chief Higdon provided a more nuanced explanation that considered the records individually (although not in great detail) when applying this exception to disclosure in paragraphs six and seven of Chief Higdon's affidavit.

Pursuant to the three-part test provided in *City of Fort Thomas*, requirements one and two were clearly satisfied by this later justification in that the SPD established the requested records were compiled for law enforcement purposes and being used for a prospective law enforcement action as the prosecution of Brison is ongoing. 406 S.W.3d at 850. However, the third requirement, "that premature release of the records would harm the agency in some articulable way[,]" requires additional analysis. *Id.*

We are troubled by the SPD making such general allegations of potential harm which would seem to apply in any criminal investigation in which witnesses are involved. If the General Assembly wished to categorically ban disclosure of all investigatory evidence as potentially harmful to a witness or to a witness's recollection, it could have done so. Additionally, there may be ways to limit rather than wholly exclude the release of the records sought so as to address any reasonable concerns. For example, to address a fear that witnesses could be compromised, measures may be taken to protect their anonymity, such as

-15-

eliminating personal identifiers, blurring portions of video that show their faces, and possibly altering their voices. *See generally New York Lawyers for Public Interest v. New York City Police Department*, 64 Misc.3d 671, 682-684, 103 N.Y.S.3d 275, 283-85 (Sup. Ct. 2019) (requiring the release of police body-worn camera footage of a police shooting of an emotionally disturbed individual with redactions to blur the faces of the witnesses but declining to redact audio given the circumstances).

To address the fear that a witness's recollection may be tainted, recorded statements of such witnesses could be taken early in the investigatory process. Witnesses who could be called to testify in any criminal prosecution could be asked to avoid press coverage surrounding the release of the records sought.

The onus in avoiding the feared harm should not prevent the release of records when the SPD itself can eliminate much of that harm through its own proactive actions and by judicious release of as much of the requested records as possible. The SPD should be acting in furtherance of the purposes of the ORA by striving to release as much information as possible, rather than stymie its purposes by trying to avoid releasing any information.

The SPD, through Chief Higdon's affidavit, generally stated that it was problematic to allow the release of the 911 calls, audio recordings, CAD

-16-

reports, dashcam bodycam footage, and incident accident reports because of two general concerns about an early release of this information: (1) it could compromise witness recollections and have a negative impact on the veracity of witness statements relating to this incident; and (2) it could taint the grand jury pool if an indictment is sought. The SPD stated that the release of only a portion of the information would have even more of a negative impact to a potential witness or grand juror "tainting and compromising their impartiality in this prospective law enforcement action."

We are troubled that other than giving one paragraph to 911 calls and one paragraph to every other kind of record sought, paragraphs six and seven of the affidavit generally complain of the same kinds of potential general harms pursuant to KRS 61.878(1)(h) for each type of record. There was no examination by Chief Higdon of how the risks might vary depending upon the type of record sought or whether some redacted records could be released.

This was not a case where the requester seeks a voluminous investigatory file in its entirety, but a targeted, specific request for five types of records regarding one event over a short period of time; thus, it would not be onerous for each type of record to be examined individually. CAD reports and incident accident reports do not necessarily carry the same risk of tainting witness recollections as dashcam and bodycam footage might. We further note that Chief

-17-

Higdon did not even address any risk to be derived from the "audio communication between dispatch, the responding officers, and any other officers or supervisory personnel" if such records do in fact exist, a matter not clarified his affidavit.[5]

But even more troublesome than these generalized claimed harms supposedly applying equally to all of the records sought is that they all relate to the danger posed by release of the information at the time the Courier-Journal originally sought the information and constitute only reasons for a *temporary* exemption. These reasons did not necessarily still exist at the time of the civil court action, at the time the motion for summary judgment was filed by the SPD or granted, or during the pendency of this appeal. While the criminal investigation may still be ongoing, the particular dangers from disclosure to that investigation which the SPD identified through Chief Higdon's affidavit may no longer be present and might not have been present even at the time he signed his affidavit.

As we have mentioned earlier, Brison was indicted in August 2020, long before the Courier-Journal filed the circuit court action. The Courier-Journal opines that any potential concern linked to compromising witnesses' testimony or their veracity should be alleviated by now if they have been interviewed, as should have occurred in the interim. However, the Courier-Journal, while hinting that the

_____

[5] We believe based on the SPD's representations during oral argument that such records do exist, which makes the failure to address them glaringly problematic.

-18-

SPD should now release records in light of likely developments in the meantime, has not articulated a basis for an ongoing duty to disclose information as conditions change. When asked about this during oral argument, the Courier-Journal suggested that the fact that the burden to justify the withholding of records remains on the SPD during the course of the litigation pursuant to KRS 61.882(3) requires disclosures be made should conditions change over the course of the litigation. The SPD, in contrast, insists there is no continuing duty to disclose should conditions change after the initial denial.

We conclude there is an ongoing duty to disclose records, at least while ORA litigation regarding these records is pending and the excuse given by the agency is, by its nature, temporary. We believe it to be both appropriate and necessary for the circuit court (either at the behest of the Courier-Journal or *sua sponte*) to request clarification of ongoing conditions and to review the evidence *in camera* to determine whether the SPD's justifications continue to require the withholding of these records.

This interpretation is bolstered by federal courts' interpretation of a similar provision exempting disclosure under the Freedom of Information Act (FOIA) known as Exemption 7(A).[6] "To fit within Exemption 7(A), the

---

[6] 5 United States Code (U.S.C.) § 552(b)(7) exempts from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law

government must show that (1) a law enforcement proceeding is pending or prospective and (2) release of the information could reasonably be expected to cause some articulable harm." *Manna v. U.S. Dep't of Justice*, 51 F.3d 1158, 1164 (3d Cir. 1995). *See Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Justice*, 746 F.3d 1082, 1096 (D.C. Cir. 2014) (*CREW*) (providing the same basic criteria worded differently).

"Exemption 7(A) is temporal in nature." *Id.* at 1097. *See N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 230, 98 S.Ct. 2311, 2321, 57 L.Ed.2d 159 (1978) (explaining that Congress's "amendment of Exemption 7 was to make clear that the Exemption did not endlessly protect material simply because it was in an investigatory file."). When applying Exemption 7(A), the withholding of information must still be valid at the time of the Court's decision. Therefore, to justify the withholding of information because of a prospective law enforcement proceeding: "The proceeding must remain pending at the time of our decision, not only at the time of the initial FOIA request. Thus, reliance on Exemption 7(A) may become outdated when the proceeding at issue comes to a close." *CREW*, 746 F.3d at 1097 (citation omitted).

---

enforcement records or information" meets one of six grounds, including (A) "could reasonably be expected to interfere with enforcement proceedings[.]"

Similarly, we believe if the risk of harm associated with the disclosure of information while the investigation is pending is temporal in nature, disclosure must be made as soon as that reason is no longer valid. The conditions which the SPD claim justify its withholding of these records appear to us to be time-limited to a period *before* the completion of Brison's prosecution, despite its assertion to the contrary.[7] Certainly, if the SPD is allowed to provide a more specific explanation of the reasons for its denial after-the-fact in response to the civil litigation, such response should not be allowed to rely on past conditions that have already lapsed.

It appears that by the time Chief Higdon's affidavit was filed, Brison had already been indicted. Therefore, as the Courier-Journal noted during oral argument, any concern regarding the impact that public disclosure of records might have on the grand jury process was no longer valid and no longer justified a refusal to disclose the records.

---

[7] During oral argument, the SPD insisted that it had properly withheld the records the Courier-Journal requested in their entirety because the investigation has not concluded. The SPD indicated that Brison's current trial date is scheduled for January 17, 2023, and it would not be appropriate to disclose anything until his prosecution is concluded. When asked whether other records could be disclosed, such as radio traffic, the SPD insisted that no portion of what the Courier-Journal requested is "vanilla" and able to be disclosed sooner, with disclosure of radio traffic being inappropriate because it listed personal information, including information related to a juvenile. However, concerns regarding personal information other than that the dashcam and bodycam footage showed a fatal accident were not raised before the circuit court.

-21-

Additionally, by now the harms feared regarding potential impacts on witness statements may have fully dissipated. We anticipate that the 911 caller has been interviewed and other witnesses' statements have been gathered, thus negating concerns about the public disclosure of records possibly compromising their recollections. Such statements should have been gathered by this time in the normal course of events.

However, during oral argument the SPD refused to clarify whether witnesses have been interviewed as that is a "matter of confidentiality." The SPD stated it has witnesses it does not want to disclose. The Courier-Journal pointed out in its rebuttal that the SPD never asserted that any of the potential witnesses were confidential informants and noted that Brison would have received reciprocal discovery identifying potential witnesses by now, thus negating harm.

We note the investigatory process cannot be delayed for the purpose of thwarting the SPD's duty to disclose records pursuant to the ORA. *See Fioretti v. Maryland State Bd. of Dental Examiners*, 716 A.2d 258, 271 (Md. 1998) (interpreting its similar Public Information Act as not permitting public agencies to avoid disclosure by failing to conclude investigations). However, without any discovery in the record which would clarify the stage of the investigation, it is impossible for us to know for sure.

If concrete harms are no longer present, the agency must make the disclosures. Citizens seeking access to records should not have to file repeated requests for the same information, hoping to catch an agency at the moment the agency decides the reason for its previous denial has lapsed. We conclude there is an ongoing duty to disclose during the pendency of an ORA action once conditions change negating the reasons for a prior denial. Such a pending action by its very existence alerts the agency that the party seeking that information continues to demand its release. This of course would not apply where the denial is not temporal in nature.

Given the SPD's refusal to produce any portion of the requested records in redacted form, and failure to explain with specificity how the release of these particular records would harm the pending investigation now, it is virtually impossible for any court to review whether the records needed to be withheld. Essentially, the SPD is asking the Courier-Journal, the circuit court, and our Court to assume its judgment on these issues is correct.

We believe that an *in camera* review could have appropriately clarified whether the actual records which existed were likely to cause the kinds of harms named. However, on the record before us, we cannot definitively say that the SPD violated the ORA. We believe it is appropriate to vacate the summary judgment on this issue and remand for further proceedings in light of our ruling

that SPD must justify that withholding the records is still necessary based on the specific concerns it raised earlier. This is not an opportunity for SPD to raise new concerns.

We strongly suggest that on remand, the circuit court conduct an *in camera* review of the complete records as would be the best way to sort out whether some of the records with redactions must now be disclosed. Alternatively, if after further proceedings the circuit court does not want to engage in an *in camera* review, it could potentially determine that the SPD has not met its burden in establishing that the records must be withheld and order them released *in toto*.

II. **Does KRS 61.878(1)(a) Justify the Withholding of the SPD Dashcam/Bodycam Footage of the Fatal Accident on the Basis that their Release would Violate the Privacy Rights of the Deceased Individuals or their Families?**

We next consider whether the SPD properly withheld the entirety of the dashcam and bodycam footage pursuant to KRS 61.878(1)(a) privacy exemption because it contains footage of a fatal accident. The Courier-Journal argues that the SPD's invocation of the personal privacy exemption was deficient because it failed to engage in a comparative weighing of the relevant interests within the context of the accident, and instead engaged in wholesale withholding of the footage rather than redacting portions which depict a deceased individual. It argues that the public has a "compelling interest in learning if SPD officers followed department policy when they chose to pursue a fleeing vehicle in a chase

-24-

that ended in the deaths of three innocent Louisvillians, including a 9-month-old

infant." The Courier-Journal notes that while KRS 61.168(4)(g) generally gives an

agency discretion "not to disclose body-worn camera records containing video or

audio footage that . . . [i]ncludes the body of a deceased individual[,]" that

discretion does not exist under KRS 61.168(5)(b) "[i]f the recording contains video

or audio footage that . . . [d]epicts an incident which leads to the detention or arrest

of an individual[.]"

To determine whether KRS 61.878(1)(a), applies to prevent

disclosure, we must apply a two-part test:

> First, we must determine whether the information sought
> is of a personal nature. Second, we must examine
> whether the public disclosure of this information would
> constitute a "clearly unwarranted invasion of personal
> privacy." We do this by weighing the privacy interests of
> the persons involved against the public's interest in
> disclosure.

*Cape Publications, Inc. v. University of Louisville Foundation, Inc.*, 260 S.W.3d

818, 821 (Ky. 2008).

> Turning to the first prong of our inquiry, we must
> take into account "the nature of the information which is
> the subject of the requested disclosure; whether it is the
> type of information about which the public would have
> little or no legitimate interest but which would likely
> cause serious personal embarrassment or humiliation."
> *Palmer v. Driggers*, 60 S.W.3d 591, 598 (Ky. App.
> 2001). We consider not only the privacy interests of the
> parties to the Open Records request, but also of persons
> who would be substantially affected by the disclosure.

-25-

> *Beckham v. Board of Educ. of Jefferson County*, 873
> S.W.2d 575, 578 (Ky. 1994). We look for an indication
> that the information "touches upon the personal features
> of private lives." *Zink v. Dep't of Workers' Claims*, 902
> S.W.2d 825, 828 (Ky. App. 1994).

*Id.* at 821-22.

What is immediately evident is that most of the content of these recordings is *not* personal in nature, nor has the SPD claimed that they are. While we have no difficulty in concluding that depictions of dead bodies are of a personal nature, this cannot justify withholding the portions of the videos that are not personal in nature. As explained in *Kernel Press, Inc.*, 620 S.W.3d at 60, when privacy concerns can be resolved through careful redaction, they should be. *See, e.g.*, *Kentucky New Era, Inc.*, 415 S.W.3d at 85 (allowing for release of police arrest and incident reports with appropriate redactions); *Department of Revenue v. Eifler*, 436 S.W.3d 530, 533 (Ky. App. 2013) (requiring production of tax returns after redaction of private information); *Cape Publications v. City of Louisville*, 147 S.W.3d 731, 735-36 (Ky. App. 2003) (concluding it was proper to release police reports with appropriate redactions). Therefore, *if* the depictions of dead bodies qualify for non-disclosure under the ORA, this problem can be solved through blurring portions of this footage.

As to the fatal accident and depiction of dead bodies, the second prong requires that we consider whether disclosure of this information would

-26-

constitute a clearly unwarranted invasion of personal privacy after we have weighed the privacy interest in nondisclosure against the general rule against the general rule of inspection and the underlying policy of openness for the public good. *Cape Publications, Inc.*, 260 S.W.3d at 822. As explained in *Kentucky New Era, Inc.*, 415 S.W.3d at 86, the Kentucky Supreme Court has held that "where the disclosure of certain information sheds significant light on an agency's conduct, . . . the citizen's privacy interest must yield."

The Courier-Journal's arguments about why this video should be disclosed provide reasons as to why the depiction of the fatal accident should be released as it will shed light on whether the SPD followed its departmental policy in engaging in this particular chase. In oral argument, the Courier-Journal emphasized that the chase and accident took place on public streets where expectations of privacy are generally lower. Therefore, it believes the interest in public disclosure should trump privacy concerns.

In contrast, the Courier-Journal's arguments do not provide any basis for believing that the actual depiction of the dead bodies will likewise elucidate the public interest concern at issue. We do recognize, however, that the depiction of the dead bodies may perhaps shed light on the consequences of the officers' actions or on their conduct as first responders to the scene of a devastating accident.

-27-

We have no trouble concluding that the dashcam and bodycam footage of the pursuit and accident cannot be withheld in full because they contain footage of the fatal accident. The privacy exemption is not nearly so broad under the circumstances as to prohibit all disclosure of the footage made of the chase and collisions.

As to the depictions of dead bodies, showing those do not necessarily violate a right to privacy. In *Sellers v. Henry*, 329 S.W.2d 214, 215 (Ky. 1959), the parents of a deceased child sued the photographer, a police officer who took the photo, for publishing it; the photo depicted the mangled body of their deceased child who was killed in an automobile accident. The Court explained that "the question of whether the publication in the instant case was in the public interest, such as to excuse an invasion of privacy, must depend upon the nature and purpose of the publication[,]" with "the question of whether the publication of such a photograph . . . is in the public interest is one of law[.]" *Id.* at 216. The Court noted that while this was a question of law, it naturally depended upon the specific facts: the context of how the photograph of the deceased child was published, including to whom, and whether the identity of the deceased child was revealed. *Id.*

We consider persuasive a long line of Attorney General opinions which conclude that as to open records decisions, a deceased person does not have

any personal property right in the depictions of that person's body as such rights terminate upon the person's death and any limited privacy interest that the deceased person's relatives may have in such a depiction will generally give way to the public interest in favor of disclosure and, in any event, cannot be asserted by the holding agency in the absence of those relatives coming forward to oppose the release of such depictions. *See In re: Kathy Harris/Kentucky State Police*, Ky. OAG 17-009, 2017 WL 366170 (Jan. 18, 2017) (unpublished); *In re: Racquel Hatfield/Justice and Public Safety Cabinet*, Ky. OAG 14-090, 2014 WL 1800792 (May 1, 2014) (unpublished). *Compare with National Archives and Records Admin. v. Favish*, 541 U.S. 157, 170, 124 S.Ct. 1570, 1579, 158 L.Ed.2d 319 (2004) (thoroughly considering whether photos depicting the body of Vince Foster Jr. after his suicide had to be released under the FOIA where his relatives vehemently opposed their release as it would subject them to harassment and trauma, and ultimately "hold[ing] that FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images").

As there is no intimation that the relatives of the deceased persons depicted in the bodycam or dashcam footage have objected to this release, there is no privacy basis for refusing to release this information to the Courier-Journal at this juncture. However, recognizing that such relatives may have an interest, if the

SPD wishes pursue a limited argument that releasing unblurred footage of the deceased persons is prohibited based on privacy interests their relatives may have, it must seek out the input of such relatives, which can then be presented in the form of affidavits, with personal identifiers omitted for the other party and an unredacted form submitted under seal to the circuit court.[8]  Whether it will be appropriate for the Courier-Journal to publish such depictions to the general public if the families do not object (or if the circuit court does not find their objections sufficient to overcome the public interest in the release of these records) is a matter that is not before us.

We do note, although this issue was not raised by the SPD prior to oral argument, that there may be other privacy interests that merit limited redaction of the dashcam bodycam footage and other records as the circuit court may determine, such as to protect juveniles.  *See, e.g.*, *Kentucky New Era, Inc.*, 415 S.W.3d at 85 (recognizing that juvenile perpetrators, juvenile victims, and juvenile witnesses are entitled to privacy protections beyond those available to adults).  An *in camera* review will likely be needed for the circuit court to determine which redactions would be appropriate to address such concerns.

---

[8] It is unclear at this juncture whether the Courier-Journal would insist upon having access to unredacted copies of the dashcam and bodycam footage or would be satisfied with versions containing targeted redactions.

**III. Does KRS 61.878(1)(l), which Allows Withholding of Records as Otherwise Prohibited from Disclosure, Allow KRS 17.150(2) to Be Interpreted as Prohibiting the Release of All Records Until the Prosecution is Completed?**

Finally, the Courier-Journal argues that KRS 17.150(2) does not control pending investigations over KRS 61.878(1)(h), but instead applies to explain what must be released after an investigation has concluded or a prosecutorial decision made. Therefore, it argues that KRS 17.150(2) cannot be used to justify withholding the records as being otherwise prohibited from disclosure under KRS 61.878(1)(l). While the Courier-Journal acknowledges that some recent Attorney General opinions have interpreted KRS 17.150(2) similarly to how the SPD has, it notes that these are not controlling and argues for their rejection.

The SPD argues for the application of KRS 17.150(2) as under the rules of statutory construction it should govern over KRS 61.878(1)(h) as it is more specific as it is limited to "intelligence and investigative reports" of "criminal justice agencies" and it believes the Courier-Journal is incorrect that it only applies after an investigation concludes. As it mentioned in its answer and argument below, as well as during oral argument, the SPD would rather rely on KRS 17.150(2) than KRS 61.878(1)(h) because KRS 17.150(2) does not require any showing of concrete harm to prohibit disclosure. By relying on KRS 17.150(2) over KRS 61.878(1)(h), it thus relies on the former essentially swallowing up the

-31-

limitations contained in the KRS 61.878(1)(h) exemption. The SPD relies on opinions from the Office of the Attorney General to support its interpretation that it could properly withhold the 911 calls, police dispatch radio traffic, the dashcam/bodycam footage, the CAD reports, and the incident reports.

KRS 61.878(1)(l) provides an exclusion from the ORA of: "Public records or information the disclosure of which is prohibited or restricted or otherwise made confidential by enactment of the General Assembly[.]"

KRS 17.150(2) provides as follows:

*Intelligence and investigative reports maintained by criminal justice agencies are subject to public inspection if prosecution is completed* or a determination not to prosecute has been made. However, portions of the records may be withheld from inspection if the inspection would disclose:

(a) The name or identity of any confidential informant or information which may lead to the identity of any confidential informant;

(b) Information of a personal nature, the disclosure of which will not tend to advance a wholesome public interest or a legitimate private interest;

(c) Information which may endanger the life or physical safety of law enforcement personnel; or

(d) Information contained in the records to be used in a prospective law enforcement action.

(Emphasis added.)

-32-

The Courier-Journal and the SPD submitted competing circuit court decisions which they argue support their respective positions regarding the interpretation to be given to KRS 17.150(2). While we have reviewed how these arguments were addressed therein, these decisions are not entitled to any weight. Although the Office of the Attorney General has applied KRS 17.150(2) broadly to restrict all access to information which law enforcement has which may pertain to a prospective law enforcement action, such opinions are not controlling, and we disagree with such an interpretation based on the statutory language. Instead, given the paucity of relevant and applicable controlling authority interpreting KRS 17.150(2), we decide this issue in accordance with our own interpretation of its relevant statutory language.

We first observe that by its terms, KRS 17.150(2) provides for the complete disclosure of intelligence and investigative reports maintained by criminal justice agencies *after* a prosecution is complete, subject to four specific exemptions. Therefore, KRS 17.150(2) should only apply if the conditions set out in its prefatory language are met. There is no reaching the exceptions where a determination to prosecute has been made and the prosecution is not yet completed. Accordingly, we do not believe that KRS 17.150(2) applies at all at this juncture as the prosecution of Brison is not complete.

A consideration of KRS 17.150(2)(d) does not alter our view. KRS 17.150(2) provides for a general duty to disclose after "prosecution is completed or a determination not to prosecute has been made[,]" with KRS 17.150(2)(d) providing an exemption for the disclosure of "[i]nformation contained in the records to be used in a prospective law enforcement action." We read KRS 17.150(2)(d) as referring to a *separate* prosecution from the one that has been completed or abandoned in KRS 17.150(2). If KRS 17.150(2)(d) applies, then KRS 61.878(1)(h) applies.

Additionally, "intelligence and investigative reports" is a narrower category by its terms than the "records" at issue under KRS 61.878(1)(h), a fact that even the Office of the Attorney General has recognized. *See In re: The Times-Tribune/Whitley County E-911 Center*, Ky. OAG 09-227, 2009 WL 5734657, *2 (Dec. 30, 2009) (unpublished) (explaining that in a previous Office of the Attorney General opinion, "we determined . . . that 911 calls, even if they are maintained by a criminal justice agency, 'cannot properly be characterized as intelligence or investigative reports' and therefore KRS 17.150(2) 'is facially inapplicable' to them"). We would also question whether dashcam and bodycam footage and audio communication between dispatch and officers would fit under

the category of "intelligence and investigative reports."[9] So even if KRS 17.150(2) somehow applied, it would not justify the complete withholding of all of the records by itself.

As we have concluded that KRS 17.150(2) does not apply to justify the withholding of records at this juncture, it provides no justification for the SPD's withholding of the records.

## IV. May the Courier-Journal be Awarded Attorney Fees, Costs, and Statutory Penalties Upon Remand?

The Courier-Journal requests that the SPD's withholding of records be deemed willful and that it be awarded attorney fees, costs, and statutory penalties upon remand as it requested in its complaint. The SPD argues that even if it should have disclosed the records, its action in withholding the records cannot be willful as it properly relied upon Attorney General opinions stating that it did not have to make any disclosure pursuant to KRS 17.150(2).

KRS 61.882(5) provides:

> Any person who prevails against any agency in any action in the courts regarding a violation of KRS 61.870 to 61.884 may, upon a finding that the records were willfully withheld in violation of KRS 61.870 to 61.884, be awarded costs, including reasonable attorney's fees,

---

[9] The phrase "intelligence and investigative reports" is potentially ambiguous as to its scope. While "investigative reports" is straightforward, "intelligence" might stand on its own, in which case it would be a broad category, or might be interpreted more narrowly to just pertain to "intelligence reports." While we do not decide this issue, for the sake of our analysis we interpret it broadly.

incurred in connection with the legal action. If such person prevails in part, the court may in its discretion award him costs or an appropriate portion thereof. In addition, it shall be within the discretion of the court to award the person an amount not to exceed twenty-five dollars ($25) for each day that he was denied the right to inspect or copy said public record. Attorney's fees, costs, and awards under this subsection shall be paid by the agency that the court determines is responsible for the violation.

Because we are vacating and remanding, a full discussion of whether the SPD's actions were willful and, if so, whether the Courier-Journal would be entitled to any potential award would be premature. However, we disagree with the SPD that its actions could never be considered willful.

The Kentucky Supreme Court has interpreted KRS 61.882(5) "to mean that the inspection right exists and fully vests when a person first seeks and is denied public records which are statutorily subject to the Open Records Act." *Utility Management Group, LLC v. Pike Cnty. Fiscal Court*, 531 S.W.3d 3, 12 (Ky. 2017). Therefore, the maximum twenty-five dollars a day award for the denial of access to public records allows for the imposition of statutory penalties beginning as soon as the records are denied.

As explained in Section I, *supra*, the original denial of the records by the SPD with just a citation to KRS 61.878(1)(h) was an improper blanket denial. If the circuit court determines that any of the requested records should have been disclosed between August 10, 2020, and October 31, 2020, the period between the

initial denial and the more detailed denial, it can properly evaluate whether the failure to disclose these records without any explanation during this time span was a willful denial, and if so, whether this willful denial justifies an award. A later explanation cannot retroactively justify the denial.

As to the withholding of records after the filing of Chief Higdon's affidavit on October 31, 2020, willfulness will need to be evaluated considering the explanations given therein. The withholding of records pursuant to KRS 61.878(1)(h) could be willful depending upon the factual determinations the circuit court will make on remand regarding the propriety of withholding these records then and the need to continue withholding these records as conditions changed. As to SPD's reliance on KRS 61.878(1)(a), as explained in Section II, *supra*, the privacy exception cannot justify withholding the dashcam and bodycam footage as a whole.

The SPD's argument that its denial cannot be willful because it relied upon Attorney General interpretations applying KRS 17.150(2) to justify the denial of records when a prosecution is not complete is overly simplistic and assumes too much. As explained in Section III, *supra*, not all the requested records constituted "intelligence and investigative reports." Therefore, even if reliance on the Office of the Attorney General opinions were to be considered reasonable (and thus

negate willfulness), such reliance cannot immunize the SPD in withholding all the records.

**CONCLUSION**

Accordingly, we vacate the portion of the Jefferson Circuit Court's order granting in part summary judgment to the Shively Police Department and denying in part the Courier-Journal's motion for summary judgment that is being appealed, and remand for further proceedings regarding the release of records requested on August 10, 2020.

The circuit court may require the parties to brief and provide proof to address the following: Given that *City of Fort Thomas*, 406 S.W.3d at 850-51, specifies that withholding records pursuant to KRS 61.878(1)(h) cannot be justified unless the "premature release of the records would harm the agency in some articulable way[,]" with the agency demonstrating a "concrete risk of harm[,]" explain whether the reasons supplied by the SPD in Chief Higdon's affidavit in paragraphs six and seven justified the withholding records at the time of the SPD's answer, whether those reasons had already expired by that time, or whether they have expired since then. If you believe any of the reasons have expired, explain when that occurred and why; to the extent any of the reasons continue, explain what records can properly be released now and what types of redactions would be warranted to limit potential harm. If the reasons have not expired, explain with

-38-

specificity why they have continuing validity now and how the release of those records even in redacted form would demonstrate an articulable concrete risk of harm to the agency's investigation.

The circuit court has a duty to consider, as explained in *Cape Publications, Inc.*, 260 S.W.3d at 821, "the privacy interests . . . of persons who would be substantially affected by the disclosure." Therefore, to the extent that the circuit court resolves that KRS 61.878(1)(h) does not prohibit the release of the requested records, the circuit may request that the parties propose what portions of the records need to be redacted to address privacy concerns. As to the dashcam and bodycam footage, the circuit court is directed to permit the SPD the opportunity to provide proof that the family of the deceased victims desire privacy as to the depictions of their deceased relatives. It will then be up to the circuit court to decide if the KRS 61.878(1)(a) exemption applies, and if so, what redactions are needed.

To facilitate the resolution of all of these issues, we strongly recommend that the circuit court conduct an *in camera* review of all of the relevant records at issue in unreacted form as it will be difficult if not impossible to sort out these issues without knowing what the records contain.

Depending upon the circuit court's ultimate ruling on remand, it may decide whether the withholding of records was willful for any period of time and,

if so, whether attorney fees, costs, and statutory penalties are appropriate and warranted.

ALL CONCUR.

| BRIEFS FOR APPELLANT: | BRIEF AND ORAL ARGUMENT FOR APPELLEE: |
|---|---|
| Jon L. Fleischaker<br>Michael P. Abate<br>William R. Adams<br>Louisville, Kentucky | Finn Robert Cato<br>Louisville, Kentucky |
| ORAL ARGUMENT FOR APPELLANT: | |
| Michael P. Abate<br>Louisville, Kentucky | |